**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DESIRED TEMP SERVICES** | } | |
| **CONTRACTORS, INC., et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | **Case No.:  2:17-cv-02149-RDP** |
| **v.** | } | |
| | } | |
| **NATIONWIDE PROPERTY AND** | } | |
| **CASUALTY INSURANCE COMPANY,** | } | |
| | } | |
| **Defendant.** | | |

**<u>MEMORANDUM OPINION</u>**

When it comes to contracts, language matters. A party's rights and obligations under a contract are largely determined by the language of the contract. It is axiomatic that courts must pay close attention to each phrase of a contract when interpreting and determining the parties' rights under that instrument. The same is true of the parties to a contract, particularly before they sign it. Just as courts must scrutinize contractual language in resolving disputes between contractual partners, contracting parties generally have a duty to read their contracts before signing on the dotted line.

This case involves unmet expectations regarding how an insurer performed under an insurance contract. The question though is whether Plaintiffs' unmet expectations are grounded in the contract's language. After careful review, the court finds they are not.

The court has before it Defendant's motion for summary judgment. (Doc. # 28). The parties have fully briefed the motion (Docs. # 29, 30, 32), and it is under submission. After

careful review, and for the reasons explained below, the court concludes that Defendant's

motion for summary judgment is due to be granted.

## I.      Factual Background[1]

Pursuant to the court's summary judgment requirements, "[a]ll material facts set forth in

the statement required of the moving party will be deemed to be admitted for summary judgment

purposes unless controverted by the response of the party opposing summary judgment." (Doc.

# 21 at 7) (emphasis omitted). Here, Plaintiffs (who oppose summary judgment) have not

controverted Defendant's statement of undisputed material facts (Doc. # 29 at 4-11), and the

court therefore deems them admitted for summary judgment purposes.

Plaintiffs Timothy Yeager and Desired Temp Services Contractors, Inc. (collectively,

"DTSC") purchased a commercial general liability insurance policy from Defendant Nationwide

Property and Casualty Insurance Company ("Nationwide"). Yeager testified that he did not

review the insurance policy he purchased from Nationwide because he is not an insurance expert

and trusted his Nationwide Agent to provide a policy that would meet DTSC's needs. (Doc.

# 29-15 at 133-36).[2] The policy's insuring agreement provides, in relevant part:

> We [Nationwide] will pay those sums that the insured [DTSC] becomes legally
> obligated to pay as damages because of "bodily injury" or "property damage" to
> which this insurance applies. We will have the right and duty to defend the
> insured against any "suit" seeking those damages. However, we will have no duty
> to defend the insured against any "suit" seeking damages for "bodily injury" or
> "property damage" to which this insurance does not apply. We may, at our

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] For all deposition transcripts, the court cites the minuscript page numbers rather than the page numbers generated by the CM/ECF system. For all citations to the record besides deposition transcripts, the court cites the CM/ECF-generated page numbers.

discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

. . . .

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

(Doc. # 29-2 at 18).

Edgar's Bakery, famous for its delicious pastries, retained DTSC to expand its production facility in Shelby County, Alabama. (Doc. # 29-3 at 2-3). While expanding the production facility, DTSC negligently applied a chemical sealant without proper ventilation, and the sealant's fumes contaminated finished inventory and raw ingredients stored in a nearby freezer. (Doc. # 29-4 at 13-14).

The parties agree that DTSC was negligent in its application of the chemical sealant and liable to Edgar's Bakery for damages caused by that negligence. (Docs. # 29 at 2; 30 at 5). On February 20, 2017, DTSC notified Nationwide of the incident, thereby initiating the claims review process. (Doc. # 29-4 at 13-14). Nationwide then contacted Edgar's Bakery to request documentation to support its losses. (*Id.* at 13). Edgar's responded by providing Nationwide its first computation of losses: $74,083. (*Id.*). In the days immediately after being notified of the claim, Nationwide contacted Yeager (DTSC's principal) to obtain more information about the incident and requested additional information from Edgar's in support of its losses. (*Id.* at 12-13).

On March 1, 2017, just over a week after initially receiving the claim, Nationwide determined that its insurance policy with DTSC covered the economic losses sustained by Edgar's Bakery as a result of DTSC's negligence. (*Id.* at 14) ("Coverage is clear"); (*Id.* at 11-12) (concluding that coverage was not precluded by the policy's pollution exclusion and stating

"appears coverage will apply"). At that time, a Nationwide employee noted that it remained to be seen if the $74,083 loss figure could "all be supported with documentation" and stated that he was "working with associate as to documentation to request from [claimant]." (*Id.* at 11).

On March 20, 2017, in response to Nationwide's prior request, Edgar's Bakery provided some documentation in support of its losses. (*Id.* at 11). But Nationwide determined the documentation was inadequate because it largely consisted of handwritten notes and did not provide sufficient information to verify Edgar's Bakery's losses. (*Id.*; Doc. # 29-5 at 96, 111-13). Nationwide therefore sent Edgar's Bakery an email detailing the deficiencies and providing specific examples of the information it was seeking. (Doc. # 29-4 at 11) (discussing additional documentation Nationwide would need to substantiate the loss, including tax documents, invoices, and sales sheets); *see also* (Doc. # 29-5 at 111-13). On March 21, 2017, Nationwide called Edgar's Bakery to further explain the deficiencies in its documentation and to provide "some ideas to substantiate the loss." (Doc. # 29-4 at 11).

On May 8, 2017, Edgar's Bakery provided Nationwide with supplemental documentation. (*Id.* at 10). Nationwide then sent the supplemental documentation to an in-house forensic accountant for review. (*Id.*). Nationwide also notified Edgar's Bakery that this forensic accountant would be reaching out directly to Edgar's "to get the correct information to resolve the claim." (*Id.*).

On June 2, 2017, Nationwide's in-house forensic accountant informed the claims adjuster that the documentation provided by Edgar's Bakery supported "just over" $35,000 in losses. (*Id.* at 9). Nationwide's accountant advised that he was confident in his analysis and that with the information provided thus far he would "have difficulty ever supporting damages north of" $40,000. (*Id.*). After the claims adjuster learned that Edgar's Bakery was considering filing suit

4

against DTSC, and recognizing that there was some "grey area" in the damages estimation, Nationwide authorized a settlement offer of $40,000 to Edgar's Bakery. (*Id.*). This settlement offer was made on or before June 14, 2017—within four months of Nationwide first being notified of the incident. (*Id.*).

Following Nationwide's $40,000 settlement offer, settlement negotiations ensued between Edgar's Bakery and Nationwide but ultimately broke down on July 12, 2017. (*Id.*). Edgar's Bakery retained counsel shortly thereafter. (*Id.*).

On August 23, 2017, counsel for Edgar's Bakery sent a formal demand letter to Nationwide, insisting that Nationwide tender a check to Edgar's Bakery for $83,497 within 45 days. (Doc. # 29-6 at 99). The letter was accompanied by Edgar's Bakery first forensic accounting report, which calculated Edgar's Bakery's losses as being between $84,006 and $86,243. (*Id.* at 100-06). Nationwide referred the report to its in-house forensic accountant for review. (Doc. # 29-4 at 8). The in-house accountant advised that "all [the report] did was take [Nationwide's] spreadsheets and change the numbers to reflect the amount that [Edgar's Bakery is] looking for." (*Id.*). After consulting with his manager, Nationwide's in-house accountant recommended having a third-party vendor provide a "second opinion" "just to further our case." (*Id.*).

By September 6, 2017, Nationwide had retained a third-party forensic accountant to evaluate Edgar's Bakery's losses. (*Id.*). Nationwide received the third-party accountant's report on October 2, 2017. (*Id.* at 7). The report concluded that the documentation submitted by Edgar's Bakery supported losses totaling $37,423. (*Id.*; Doc. # 29-6 at 86). The third-party accountant disagreed with Edgar's Bakery's forensic accounting report on two main points: (1) the inclusion of fixed overhead costs in the replacement cost of the damaged product and (2) Edgar's Bakery's

view that it had lost $93,363 in sales revenue (and a corresponding amount in lost profits) that it would have received but for the incident. (Doc. # 29-6 at 87).

Around October 9, 2017, Nationwide again offered Edgar's Bakery $40,000 for its losses based on the third-party accountant's report. (Doc. # 29-4 at 7). Edgar's Bakery rejected the offer. (*Id.* at 6). On November 22, 2017, Edgar's Bakery filed suit against DTSC in the Circuit Court of Shelby County, Alabama, asserting claims of negligence, breach of contract, and negligent breach of contract. (*Id.*; Doc. # 29-7 at 22, 25-26). Within a week, Nationwide tendered DTSC a defense to this lawsuit. (Doc. # 29-10 at 2).[3] Nationwide defended DTSC against Edgar's Bakery's claims for about six months, until all claims were resolved on May 22, 2018, at a global mediation involving Edgar's Bakery, DTSC, and Nationwide. (Doc. # 29-4 at 181-83). Nationwide ultimately paid Edgar's Bakery $80,000 to settle its claims against DTSC, and the lawsuit against DTSC was dismissed with prejudice on June 5, 2018. (*Id.* at 181; Doc. # 29-7 at 105).

During the course of its lawsuit against DTSC (from November 2017 to May 2018), Edgar's Bakery refrained from doing business with DTSC. (Doc. # 29-13 at 13-15). While the lawsuit was pending, Edgar's Bakery gave business that ordinarily would have gone to DTSC to other companies. (*Id.*). After the lawsuit settled, the amount of business DTSC received from Edgar's Bakery returned to pre-suit levels. (*Id.* at 15).

At his deposition, Yeager testified that he was very dissatisfied with how Nationwide handled Edgar's Bakery's claim and that he would not have purchased insurance from Nationwide had he known Nationwide would handle a claim like this one as they did. (Doc.

_____

[3] Nationwide tender the defense under a reservation of rights. (Doc. # 29-10 at 2). Specifically, Nationwide noted that though its policy with DTSC likely required it to defend DTSC against Edgar's Bakery's negligence claim, Nationwide might not be required to defend the breach of contract and negligent breach of contract claims. (*Id.* at 5). But Nationwide agreed to "continue to defend [DTSC] under this reservation of rights." (*Id.*).

# 29-15 at 125-28, 162-63). In his view, Edgar's Bakery submitted a "legitimate claim" that should have been paid immediately, without Nationwide disputing the amount of Edgar's Bakery's loss. (*Id.* at 126).

DTSC filed this lawsuit against Nationwide on November 22, 2017, the same day that Edgar's Bakery filed suit against DTSC. (Doc. # 1-1 at 5). DTSC asserts five claims against Nationwide: (1) breach of contract, (2) bad faith, (3) fraudulent misrepresentation, (4) fraudulent suppression, and (5) negligence. (*Id.* at 9-13). Nationwide has moved for summary judgment on each of the claims.

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and -- by pointing to affidavits, depositions, answers to interrogatories, or admissions on file -- designate specific facts showing that there is a genuine dispute for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d

1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## III.    Analysis

DTSC asserts five claims against Nationwide in this lawsuit: (1) breach of contract, (2) bad faith, (3) fraudulent misrepresentation, (4) fraudulent suppression, and (5) negligence. As explained below, DTSC has failed to create a genuine issue of material fact with respect to any of those claims. Nationwide is therefore entitled to summary judgment.

### A.  Breach of Contract

In Alabama, general rules of contract law govern an insurance contract. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001). Like any other contractual party, "[i]nsurance companies are entitled to have their policy contract enforced as written." *Id.* Courts interpreting an insurance policy (like the consumers who purchase them) must pay careful attention to "each phrase [of the contract] in the context of all other provisions." *Id.* (internal quotation marks omitted). Contractual language in an insurance policy "should be given the same

meaning that a person of ordinary intelligence would reasonably give it." *W. World Ins. Co. v. City of Tuscumbia*, 612 So. 2d 1159, 1161 (Ala. 1992).

To sustain a claim for breach of contract, a plaintiff must show: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). Here, the undisputed material facts and the plain language of the insurance contract show that DTSC cannot establish the third element—that Nationwide breached its contractual obligations. For that reason, Nationwide is entitled to summary judgment on DTSC's contract claim.

The relevant portion of the insurance contract between DTSC and Nationwide provides that Nationwide "will pay those sums that [DTSC] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance provides." (Doc. # 29-2 at 18). The contract also states that Nationwide "will have the right and duty to defend [DTSC] against any 'suit' seeking those damages." (*Id.*). Finally, the contract gives Nationwide the "discretion" to "investigate any 'occurrence' and settle any claim or 'suit' that may result." (*Id.*).

It is undisputed that Nationwide: (1) investigated the incident at Edgar's Bakery that gave rise to this claim; (2) quickly determined that Edgar's Bakery's economic losses were covered under DTSC's policy; (3) disputed the total loss figures submitted by Edgar's Bakery on the basis of conflicting analyses by both an in-house and third-party forensic accountant; and, (4) when Edgar's Bakery sued DTSC, defended DTSC in the lawsuit and ultimately settled Edgar's Bakery's claims against DTSC. At no point did Nationwide deny that Edgar's Bakery's economic losses were covered by DTSC's policy; rather, it merely disputed Edgar's Bakery's valuation of those losses. Moreover, as the plain language of the contract makes clear,

9

Nationwide was under no obligation to pay any sums on DTSC's behalf until DTSC "[became] legally obligated to pay" those sums "as damages." (*Id.*). That never happened in this case—no judgment was ever entered against DTSC requiring it to pay damages to Edgar's Bakery. Instead, Nationwide exercised its right (and duty) under the contract to defend DTSC against Edgar's Bakery's suit seeking damages and to ultimately settle that suit by paying Edgar's Bakery $80,000. Nationwide thus fully complied with its contractual obligations.

To be sure, as it turned out, both Nationwide and DTSC would have been better off had Nationwide simply resolved the claim based on Edgar's Bakery's first computation of losses—$74,083. That sum would have been less than the amount Nationwide ultimately paid to settle the lawsuit and would have spared both Nationwide and DTSC the expense of litigation. But at the time Edgar's Bakery submitted its first loss estimate, Nationwide did not believe the figure was supported by the evidence, and it therefore reasonably chose to further investigate the claim and defend its insured when Edgar's Bakery chose to sue DTSC. Though the decision might have proved more costly in hindsight, it was not a breach of the insurance contract.

DTSC complains that Nationwide should have accepted Edgar's Bakery's initial loss figures or settled its initial dispute with Edgar's Bakery over the value of the claim sooner. By delaying in compensating Edgar's Bakery, DTSC contends, Nationwide caused it to lose Edgar's Bakery's business during the pendency of the litigation. But DTSC's insurance contract contains no "speedy resolution" clause requiring Nationwide to resolve claims before suit is filed against its insured. To the contrary, the contract expressly gives Nationwide the "discretion" to "investigate any 'occurrence' and settle any claim or 'suit' that may result." (*Id.*). Nationwide exercised that discretion in this case to investigate the amount of losses Edgar's Bakery claimed and to ultimately settle the lawsuit between Edgar's Bakery and DTSC.

DTSC asserts that Nationwide breached various other contractual duties imposed by the insurance policy, but no reasonable jury could find that Nationwide breached the insurance contract based on these assertions.

First, DTSC states that Nationwide breached its duty to promptly investigate claims filed by DTSC. (Doc. # 30 at 15). But DTSC does not cite any contractual language imposing a duty of "promptness" upon Nationwide in the investigation of claims. Instead, the insurance contract grants Nationwide "discretion" to "investigate any 'occurrence,'" indicating that the extent and timing of Nationwide's claims investigation procedures are committed by contract to its discretion. (Doc. # 29-2 at 18). And in any event, DTSC has identified no record evidence suggesting that Nationwide unreasonably delayed in investigating the Edgar's Bakery claim. Nationwide determined that coverage applied to the incident just over a week after it was first notified of the incident. (Doc. # 29-4 at 11-12, 14). The remaining delay in resolving the claim was due to a reasonable dispute between Nationwide and Edgar's Bakery regarding the amount of Edgar's Bakery's losses; it was not a result of any failure to promptly investigate the claim by Nationwide.

Second, DTSC asserts that Nationwide breached its contractual duty to abide by its own policies and procedures, including its Casualty Best Claims Practices, and all relevant state law. (Doc. # 30 at 15). But DTSC has not identified any provision of its insurance contract requiring Nationwide to abide by its policies and procedures or state law, such that a violation of those rules would give rise to a breach of contract claim. Further, and in any event, DTSC has not identified any record evidence showing how Nationwide failed to abide by its own policies and procedures or state law. DTSC has merely made the conclusory assertion that Nationwide

(somehow) failed to abide by its own policies and procedures and state law. (*Id.* at 15, 18). That is insufficient to create a genuine issue of material fact necessary to survive summary judgment.

Third, DTSC asserts that Nationwide has not reimbursed it for expenses DTSC incurred as a result of Edgar's Bakery's lawsuit against it pursuant to the Supplementary Payments section of the insurance policy. (Doc. # 30 at 15). The insuring agreement portion of the policy states that "[n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**" (Doc. # 29-2 at 18). A provision of the policy titled "Supplementary Payments – Coverages A and B" goes on to provide, in relevant part: "We [Nationwide] will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend . . . [a]ll reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit', including actual loss of earnings up to $250 a day because of time off from work." (*Id.* at 25).

Nationwide is entitled to summary judgment as to this portion of DTSC's breach of contract claim for two independent reasons. (1) DTSC's claim regarding supplementary payments is not part of this lawsuit. The complaint contains no allegation that Nationwide failed to remit supplementary payments to DTSC (Doc. # 1-1 at 6-10), and the undisputed evidence shows that Nationwide first received notice of DTSC's claim for supplementary payments in October 2018—nearly a year after this lawsuit was filed. (Docs. # 32-2 at 2; 32-3 at 4).[4] (2) Even if DTSC's claim for supplementary payments were part of this lawsuit, DTSC has not identified any record evidence from which a jury could find that Nationwide breached its obligation to

---

[4] After receiving the claim for supplementary payments, Nationwide acknowledged the claim and asked DTSC to provide "the specific and particular expenses for which DTSC is seeking reimbursement" and "[a]ny correspondence or documentation reflecting a specific request by Nationwide for DTSC's assistance in the defense or investigation of the underlying claim." (Doc. # 32-3 at 3). DTSC has yet to provide Nationwide with any of this information. (Doc. # 32 at 4).

provide supplementary payments to DTSC. DTSC has not identified any expenses "incurred by [DTSC] at [Nationwide's] request to assist [Nationwide] in the investigation or defense of the claim." (Doc. # 29-2 at 25). Nationwide is therefore entitled to summary judgment on DTSC's claim for supplementary payments.

Fourth and relatedly, DTSC asserts that Nationwide failed to put it on notice of the availability of benefits under the Supplementary Payments section of the policy. (Doc. # 30 at 15). But that assertion is belied by the undisputed Rule 56 evidence. The Supplementary Payments portion of the policy is clearly printed and identified in the insurance policy. (Doc. # 29-2 at 25). Yeager conceded at his deposition that Nationwide always provided him with up-to-date copies of his insurance policies. (Doc. # 29-15 at 135-36). The reason DTSC did not know about the Supplementary Payments section is that, as he admitted at his deposition, Yeager did not read the policy. (*Id.* at 133). Yeager was under a duty to read his insurance policy, *Alfa Life Ins. Corp. v. Reese*, 185 So. 3d 1091, 1102-04 (Ala. 2015), and his failure to do so does not amount to a failure on Nationwide's part to put him on notice of the benefits available under the policy.

For all these reasons, DTSC has failed to create a genuine issue of material fact with respect to its contract claim. Nationwide is therefore entitled to summary judgment on that claim.

## B.  Bad Faith

In Alabama, "there is only *one* tort of bad-faith refusal to pay a claim, not two 'types' of bad faith or two separate torts." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013). This tort has four elements (which represent the "normal" case of bad faith), with a conditional fifth element that applies in "abnormal" cases of the tort. *Id.* at 258.

The four elements of a normal bad-faith claim are: (1) the breach of an insurance contract; (2) the refusal to pay a claim; (3) the absence of an arguable reason for the failure to pay; and (4) the insurer's knowledge of such absence of any arguable reason. *Id.* The fifth conditional element defines the abnormal case of a bad-faith claim, which is premised upon an insurer's failure to determine the existence of a lawful basis to deny a claim (rather than the insurer's knowing lack of an arguable reason to deny the claim). *Id.* To prevail on an abnormal bad-faith claim, a plaintiff "must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Id.*

Whether DTSC's bad-faith claim is construed as "normal" or "abnormal" (or both), Nationwide is entitled to summary judgment on the claim. That is so because DTSC cannot establish the most basic element of any bad-faith claim (normal or abnormal): the breach of an insurance contract, or the refusal to pay sums owed under an insurance contract. As discussed above, no reasonable juror could find that Nationwide breached its insurance contract with DTSC. The contract required Nationwide to pay those sums DTSC "[became] legally obligated to pay as damages." (Doc. # 29-2 at 18). It is undisputed that DTSC never became legally obligated to pay Edgar's Bakery any sum as damages—no judgment was ever entered against DTSC. Instead, when Edgar's Bakery sued DTSC, Nationwide defended its insured and ultimately settled Edgar's Bakery's claims against DTSC for $80,000. If no reasonable juror could find that Nationwide breached its insurance contract, then it follows that no reasonable juror could find that Nationwide breached the insurance contract *in bad faith*.

Indeed, a plaintiff asserting a normal bad-faith claim cannot get to a jury on that claim unless he is entitled to a directed verdict on his contract claim. *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 304-07 (Ala. 1999). Where the *defendant* is entitled to summary judgment

on the contract claim, summary judgment on an accompanying bad-faith claim is doubly appropriate. And even an abnormal bad-faith claim still requires proof that the defendant "refuse[d] to pay the claim." *Brechbill*, 144 So. 3d at 258. Nationwide paid the claim in this case—it settled Edgar's Bakery's lawsuit against its insured for $80,000. DTSC's real complaint is that Nationwide did not resolve the claim fast enough. But as explained above, the insurance contract did not require that Nationwide resolve claims within a prescribed period of time, and Nationwide's actions were in any event reasonable because they were based on a genuine dispute concerning the amount of Edgar's Bakery's losses. The evidence in this case simply cannot support a finding that Nationwide breached any contractual duty owed to DTSC, let alone did so in bad faith.

### C. Fraudulent Misrepresentation and Fraudulent Suppression

DTSC asserts claims of both fraudulent misrepresentation and fraudulent suppression against Nationwide. Nationwide is entitled to summary judgment on both.

In Alabama, the tort of fraudulent misrepresentation has four elements: (1) a false representation; (2) concerning a material existing fact; (3) on which the plaintiff relied; (4) where the plaintiff was damaged as a proximate result of the reliance. *George v. Associated Doctors Health & Life Ins. Co.*, 675 So. 2d 860, 862 (Ala. 1996). Nationwide is entitled to summary judgment on DTSC's misrepresentation claim because DTSC has failed to identify evidence from which a jury could find the first element—that Nationwide made a false representation.

DTSC has not identified any false representation allegedly made by Nationwide. (Doc. # 30 at 20-21). Indeed, Yeager testified at his deposition that he was unaware of any specific facts Nationwide represented to him that were untrue. (Doc. # 29-15 at 138). DTSC's "misrepresentation" claim is instead premised on the assertion that Yeager and DTSC's

Nationwide Agent, Russ Richardson, failed to disclose certain material "facts" to DTSC. (Doc. # 30 at 20). But a claim that an insurance company failed to disclose material facts about an insurance policy is really a fraudulent *suppression* claim, not fraudulent *misrepresentation* claim. *See Slade*, 747 So. 2d at 323-24. Allegations of nondisclosure cannot support an affirmative misrepresentation claim, and Nationwide is therefore entitled to summary judgment on that claim.

DTSC also asserts a claim for fraudulent suppression in this case. In Alabama, a fraudulent suppression plaintiff must establish five elements: "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result." *Slade*, 747 So. 2d at 323-24. Nationwide is entitled to summary judgment on DTSC's suppression claim because DTSC cannot establish the second element. No reasonable juror could find from the Rule 56 evidence that Nationwide suppressed an existing material fact when selling DTSC its insurance policy.

DTSC asserts that its Nationwide Agent, Russ Richardson, failed to disclose two material "facts" to DTSC at the point of sale: (1) that Nationwide had the sole authority under the insurance policy to determine when it was legally obligated to pay a claim and (2) that it was possible DTSC could incur costs while waiting for Nationwide to resolve a claim that would not be covered under the insurance policy. (Doc. # 30 at 20, 22-24). DTSC claims that, had Richardson disclosed those "facts" to Yeager, it would not have purchased insurance from Nationwide.

16

Nationwide is entitled to summary judgment on this claim because the undisputed Rule 56 evidence shows that it did not fail to disclose either of these purported "facts." The first purportedly undisclosed fact -- that Nationwide had the sole authority under the insurance policy to determine when it was legally obligated to pay a claim -- is not a "fact" at all. It is instead a legal conclusion concerning the proper interpretation of DTSC's insurance contract—and an erroneous one at that. DTSC's insurance policy with Nationwide clearly disclosed that Nationwide would "pay those sums that [DTSC] becomes legally obligated to pay as damages." (Doc. # 29-2 at 18). The contract thus did not give Nationwide sole authority to determine when to pay a claim; it instead *required* Nationwide to pay sums under the policy whenever DTSC became "legally obligated" to pay those sums "as damages." (*Id.*). Nationwide simply cannot be liable for failing to disclose that it had the sole authority to decide when it was legally obligated to pay a claim because (1) it did not have such sole authority and (2) the policy language clearly disclosed the time at which Nationwide was obligated to pay out sums—when its insured became legally obligated to pay those sums as damages.

The insurance policy (which was provided to but not read by Yeager) also clearly disclosed the second purportedly undisclosed fact—that DTSC might incur costs while waiting for Nationwide to resolve a claim, and that those costs would not be covered under the insurance policy. The policy stated in no uncertain terms: "No other obligation or liability to pay sums or perform acts or services is covered *unless explicitly provided for* under Supplementary Payments – Coverages A and B." (*Id.*) (emphasis added). Nationwide thus disclosed to DTSC that it would be responsible for any "other" costs not "explicitly provided for" in the insurance contract. (*Id.*). Again, the only reason DTSC might have lacked subjective awareness of the scope of coverage

17

available under its insurance policy is that Yeager failed to read the policy. (Doc. # 29-15 at 133). But that is Yeager's fault, not Nationwide's. *See Reese*, 185 So. 3d at 1102-04.

For all these reasons, Nationwide is entitled to summary judgment on DTSC's fraudulent misrepresentation and suppression claims.

### D.   Negligence

DTSC claims that Nationwide (1) negligently failed to disclose material facts to it and (2) negligently failed to properly adjust, investigate, and process Edgar's Bakery's claim. (Doc. # 30 at 25-32). But DTSC's first assertion is just an attempt to recast its fraudulent suppression claim as a negligence claim. And as explained above, the court has already determined that Nationwide is entitled to summary judgment on DTSC's fraudulent suppression claim. As to DTSC's second assertion, the Alabama Supreme Court has "consistently refused to recognize a cause of action for the negligent handling of insurance claims." *Kervin v. S. Guar. Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995). If an insurance company improperly investigates and denies an insurance claim, an insured's remedy is a breach of contract claim, not a negligence claim. *See id.* at 705-06. Nationwide is therefore entitled to summary judgment on DTSC's negligence claim.

### IV.   Conclusion

For the reasons explained above, Defendant's motion for summary judgment (Doc. # 28) is due to be granted in its entirety. A separate order will be entered.

**DONE** and **ORDERED** this June 27, 2019.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE